WAYNE F. MCGOWN, Deputy Secretary, Department of Administration
You have requested my opinion on the following question:
 "Does the Department of Administration or the State Building Commission have the power of condemnation when *Page 291 
acquiring land pursuant to sections 13.48 (17) and 13.48 (18), Wis. Stats.?"
Section 13.48 (17) and (18), created by ch. 90, Laws of 1973, provide as follows:
 "(17) ADVANCED LAND ACQUISITION. In the interest of preventing land speculation the commission may acquire property within the blocks bordered by East Washington Avenue, South Webster Street, East Wilson Street and South Hancock Street in the city of Madison for possible future construction.
 "(18) ACQUISITION OF OPEN SPACES. The commission may acquire property adjacent to or within 2 blocks of any state facility for the purpose of establishing and developing open green spaces and possible future construction."
Section 13.48 (16), Stats., provides:
 "MADISON DOWNTOWN STATE OFFICE FACILITIES. The eminent domain authority of the building commission under ch. 32 is limited to the acquisition of such parcels of land as it deems necessary for a site for Madison downtown state office facilities, whenever the commission is unable to agree with the owner upon the compensation therefor, or whenever the absence or legal incapacity of such owner, or other cause prevents or unreasonably delays such agreement."
Subsection (16) was created by ch. 397, Laws of 1969, to facilitate the acquisition of lands for the then contemplated and subsequently constructed Madison downtown state office facility.
The answer to your question depends on whether the power granted by subsec. (16) was intended to be limited to a particular office facility or whether the legislature intended to restrict such authority to a particular area and purpose.
The language "for a site for Madison downtown state office facilities," in my opinion, supports the latter construction. The opposite conclusion would require that the word "site" be construed as singular. Such construction would be contrary to sec. 990.001 (1), Stats., which requires that in construing statutes, "the singular includes the plural," unless such construction "produces a result *Page 292 
inconsistent with the manifest intent of the legislature." I find nothing to indicate that such construction violates the manifest intent of the legislature. In fact, the manifest intent would seem to be just the contrary. Chapter 397, Laws of 1969, which created sec. 13.48 (16), Stats., was published on February 24, 1970. In March of 1969, or almost one year before the enactment of ch. 397, the Building Commission filed its 1969-1975 State Building Program report with the legislature. This report (PP 145-152) extensively discusses the possible construction of a Madison downtown office complex in succeeding phases. This report clearly shows that the building program contemplated more than one state office facility and more than one site.
Accordingly, sec. 13.48 (16), Stats., authorizes the Building Commission to acquire sites by condemnation. However, under sec.13.48 (16), the power of condemnation of the Building Commission is restricted to the downtown Madison area and to sites for state office facilities.
The authority to acquire such sites belongs to that state agency known as Building Commission. The Department of Administration does not have the power of condemnation under sec.13.48, Stats., nor may the Department of Administration acquire lands under secs. 13.48 (17) and (18), as created by ch. 90, Laws of 1973. These subsections all refer to the Building Commission.
It seems to me, and it is my opinion, that the power of condemnation may be exercised by the Commission to acquire lands for "possible future construction," as authorized by sec. 13.48
(17).
First of all, subsec. (17) defines an area that meets the downtown Madison criteria as set forth in subsec. (16). Secondly, considering sec. 13.48, Stats., in its entirety, one finds that the primary purpose of the Building Commission is to provide housing for state agencies. Accordingly, the term "possible future construction," as used in subsec. (17), must refer to "state office facilities." Accordingly, the second criteria necessary for the exercise of the power of condemnation, as contained in subsec. (16), is met in subsec. (17).
As to subsec. (18) of sec. 13.48, as created by ch. 90, Laws of 1973, the answer depends on the location of the area involved. Obviously, the Commission cannot condemn lands under subsec. *Page 293 
(16) in any area that does not fall within the description "Madison downtown." Under subsec. (18), the Commission may purchase lands for the purposes specified in the subsection, but condemnation may not even be considered as a possibility if the lands do not fall within the geographic limits established in subsec. (16).
Condemnation may be employed under subsec. (18), if the lands are located within the "Madison downtown" area, and if the lands are acquired for possible future construction, or in other words, for a future state office facility.
Subsection (18) is somewhat confusing. Under this subsection, lands may be acquired "for the purpose of establishing and developing open green spaces and possible future construction." It is difficult to determine from the above-quoted language whether the legislature intended that all acquisitions under this subsection were to be acquired and held for future construction or whether lands could be acquired for the sole purpose of developing green spaces. If the latter interpretation is correct, it would have been clearer if the legislature had employed the word "or" rather than the word "and."
Our court in State ex rel. Wisconsin D. M. Co. v. Circuit Court
(1922), 176 Wis. 198, 186 N.W. 732, has noted that the words "and" and "or" are often used incorrectly in statutes. Continuing, the court concluded that one may be substituted for the other in deference to the meaning of the context. "Open green spaces" and "future construction" could be, in a given situation, mutually exclusive or inconsistent uses. In my opinion, it appears that it was the intent of the legislature to authorize, under subsec. (18), the acquisition of green spaces for that purpose alone. Such acquisitions add to and preserve the beauty and usefulness of state buildings. However, the question remains as to whether lands may be acquired by condemnation for green or open spaces when such use is the only use and future construction on such lands is not within the intent of the Commission. The answer to this question depends on whether such open or green spaces fall within the term "office facilities," as used in subsec. (16) of sec. 13.48.
The term "facility" is defined in Webster's Seventh New Collegiate Dictionary as: *Page 294 
 "1: the quality of being easily performed 2: ease in performance: APTITUDE 3: readiness of compliance 4 a: something that facilitates an action, operation, or course of conduct — usu. used in pl. b: something (as a hospital) that is built, installed, or established to serve a particular purpose."
In my opinion, the terms "open or green space" do not fall within the meaning of the phrase "office facilities." Accordingly, in my opinion, the power of condemnation, as authorized under sec. 13.48 (16), Stats., may not be employed when such acquisitions do not involve any possibility of future construction of an office facility. Lands may be condemned and put to the interim use of open or green space, but such acquisitions must encompass the possibility of future construction and, as previously mentioned, condemnation for the purposes of subsec. (18) is restricted to the Madison downtown area by sec. 13.48 (16), Stats., and is further limited by subsec. (18) to an area "within 2 blocks" of a state facility.
You also ask:
 "Is the Department of Administration or the State Building Commission, when acquiring land pursuant to sections 13.48 (17) and 13.48 (18), Wis. Stats., required to file a relocation plan and is it authorized to use public funds to make relocation payments as might be appropriate pursuant to section 32.19, Stats., et seq. where the negotiations are initiated by the seller or where the seller has publicly given indication of a desire to sell?"
In answering the above-quoted questions, I again restrict consideration to the Building Commission, for sec. 13.48 only relates to that particular agency.
In the acquisition of lands under sec. 13.48 (17), and in the acquisition of lands under sec. 13.48 (18), for which the power of condemnation may be exercised, as previously discussed, a relocation assistance plan must be filed pursuant to sec. 32.25
(1), Stats. This statute reads:
 "Notwithstanding ch. 275, laws of 1931, or any other provision of law, no condemnor shall proceed with any property acquisition activities on any project which may involve acquisition of property and displacement of persons, business *Page 295 
concerns or farm operations until the condemnor has filed in writing a relocation payment plan and relocation assistance service plan and has both such plans approved in writing by the department of local affairs and development." (Emphasis ours.)
I am of this opinion, even though the Building Commission has not or may not authorize condemnation.[1]
The term "condemnor," as employed in secs. 32.19 through 32.27, must refer to an agency that has the power of condemnation, rather than whether such power is used. For example, sec. 32.25, Stats., requires that a plan be filed and approved by a condemnor before "any property acquisition activities" are commenced.
Further, "displaced person," as defined in sec. 32.19 (2) (c), Stats., refers to those who are required to move as a "result of the acquisition." In other words, a person may be "displaced" within the meaning of the Act even though the acquisition resulted from a negotiated sale.
Sections 32.19 through 32.27, Stats., the State Relocation Assistance Act, is remedial legislation as can be seen from the legislative declaration set forth in sec. 32.19 (1), Stats., which reads:
 "DECLARATION OF PURPOSE. The legislature declares that it is in the public interest that persons displaced by any public project be fairly compensated by payment for the property acquired and other losses hereinafter described and suffered as the result of programs designed for the benefit of the public as a whole; and the legislature further finds and declares that, notwithstanding ch. 275, laws of 1931, or any other provision of law, payment of such relocation assistance and assistance in the acquisition of replacement housing are proper costs of the construction of public improvements. If the public improvement is funded in whole or in part by a nonlapsible trust, the relocation payments and assistance constitute a purpose for which the fund of the trust is accountable." *Page 296 
Remedial statutes are to be liberally construed so as to suppress the mischief and advance the remedy they offer. Stone v.Inter-State Exchange (1930), 200 Wis. 585, 229 N.W. 26.
The evils or loss occasioned by public acquisition is not dependent on whether the acquisition is accomplished by sale or condemnation. The same evils may exist in either process.
Accordingly, a plan must be filed by the State Building Commission for acquisitions where the power of condemnation exists even though the Commission has no intention of using such power.
Assuming an appropriation, the use of public funds for the payment of relocation assistance is, of course, appropriate.
Whether relocation benefits are payable in any given situation depends on whether such person is a "displaced person" within the meaning of that term as defined by law. The answer to whether such benefits are payable depends on an examination of all the facts relating to a particular situation. Therefore, I cannot answer the question you have asked in regard to this particular matter.
In this opinion, I have restricted consideration to the specific questions asked. The opinion is to be considered in the light of such restrictions.
In conclusion, it is my opinion that the Building Commission may exercise the power of condemnation, as given by sec. 13.48
(16), Stats., for acquisitions under sec. 13.48 (17), as created by ch. 90, Laws of 1973, and for acquisitions under subsec. (18), when such acquisitions involve lands located within the downtown Madison area and are acquired as a site for the possible future construction of state office facilities.
The Commission must file a plan as required by sec. 32.25, Stats., whenever it contemplates engaging in land acquisition activities where the power of condemnation exists under law.
RWW:CAB *Page 297 
[1] Also, see opinion, dated August 3, 1973, addressed to Chas. M. Hill, Sr., Secretary, Department of Local Affairs and Development.